**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KRISTI JAMES** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.:** |
| **vs.** | ) | |
| | ) | |
| **THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT**
**EMPLOYEE RETIREMENT INCOME SECURITY ACT**

COMES NOW Plaintiff Kristi James, by and through undersigned counsel, pursuant to the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. §1001 *et. seq*., and for her cause of action against Defendant The Lincoln National Life Insurance Company, respectfully states the following:

1. Plaintiff, Krisit James (hereinafter "Ms. James") brings this action against Defendant The Lincoln National Life Insurance Company (hereinafter "Lincoln") for damages caused by the Defendant's breach of statutory, contractual and fiduciary obligations and violations of the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. § 1001 *et. seq.* ("ERISA").

2. Ms. James seeks recovery and payment of benefits due under a healthcare benefits plan, statutory penalties, and costs and attorney's fees associated with this action, as provided by ERISA.

3. This is an action brought pursuant to 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331. Under 29 U.S.C. §1132(f), the Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

4. Venue is proper in this District pursuant to 29 U.S.C. §1132(e)(2), in that the subject employee welfare benefit plan and employee insurance program are administered in this District, the breaches of duty herein alleged occurred in this District, and Defendants reside or are found in this district.

**Parties**

5. Ms. James is an individual residing in the Eastern District of Missouri. She is a vested participant in a Group Insurance Policy for certain employees of Magellan Health, Inc., which provides an employee benefit plan within the meaning of 29 U.S.C. § 1132(a).

6. Ms. James has standing to bring this action as a beneficiary under 29 U.S.C. §1132(a).

7. Lincoln provides health care coverage for certain employees of Magellan Health, Inc. under an employee welfare benefit plan (hereinafter "Plan") within the meaning of 29 U.S.C. § 1002. Specifically, Defendant provides long term disability benefits (hereinafter "LTD") through insurance coverage.

8. Lincoln is an insurance company incorporated in Indiana and is doing business in Missouri under a license to do business as a Foreign Insurance Company.

9. Lincoln administers and pays benefits under the terms of the LTD plan and is a fiduciary within the meaning of 29 U.S.C. §1002(16),

10. Magellan Health, Inc. is a health care company incorporated in Delaware and doing business in Missouri under a license.

11. Magellan Health, Inc. serves as the plan administrator and sponsor under the meaning of 29 U.S.C. § 1002(16).

**COUNT I**
**Wrongful denial of Benefits pursuant 29 U.S.C. § 1132(a)(1)(b)**

12. Ms. James was diagnosed with Psoriatic Arthritis in September 2019.

13. At all relevant times, Ms. James was under the care of licensed medical providers.

14. On September 11, 2019, Ms. James filed her long-term disability claim.

15. Ms. James' LTD benefits were approved from September 11, 2019 through September 22, 2020.

16. On September 23, 2020, Lincoln discontinued Ms. James' LTD benefits after concluding she was no longer disabled as defined by the Plan.

17. On July 7, 2021, Ms. James filed her appeal of Lincoln's September 2020 adverse determination of her LTD benefits.

18. On January 5, 2022, Lincoln upheld its adverse determination of Ms. James' LTD benefits.

19. During the appeal evaluation, Ms. James provided objective medical evidence detailing how her diagnosis has resulted in a disability preventing her from performing the material duties of her regular job.

20. Lincoln's denial was an abuse of discretion and not based on the substantial objective evidence and was the byproduct of breaches of the fiduciary duties owed to Ms. James, conflicts of interest, and serious procedural irregularities.

21. The Plan covers Ms. James' disability, and as such, Lincoln is required to pay her long-term disability benefits under the terms of the Plan, together with prejudgment interest, attorney's fees, and costs.

**WHEREFORE**, Plaintiff Kristi James respectfully prays for judgment against Defendant The Lincoln National Life Insurance Company granting equitable relief including payment of the benefits, interest on past due sums, attorney fees and costs, and for any other such relief as this Court deems just and proper under the circumstances.

**COUNT II**
**Breach of Fiduciary Duty Pursuant to 29 U.S.C. §1132(a)(3)**

22. Paragraphs 1-21 are incorporated in Count II by reference as if fully set forth as paragraph 22.

23. Ms. James also brings this claim against Lincoln under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which permits a participant to bring an action to enjoin any act or practice which violates ERISA or the terms of the plan or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of ERISA or the terms of the plan.

24. Pursuant to 29 U.S.C. § 1104, Lincoln is a fiduciary of Ms. James.

25. As a fiduciary, Lincoln owes Ms. James the duties of loyalty and prudence and is obligated to make decisions in favor of awarding her benefits under the Plan.

26. ERISA § 503, 29 U.S.C. § 1133 requires that every employee benefit plan must:

a. provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant; and

b. afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

27. Lincoln did not afford Ms. James a full and fair review of her LTD benefits denial and breached the duties of loyalty and prudence.

**Objective Medical Evidence**

28. To facilitate a full and fair review, Ms. James submitted objective medical evidence detailing her disability.

29. Ms. James suffers from Psoriatic arthritis (PsA), an autoimmune disease that mistakenly attacks healthy tissue, primarily in the joints and skin. The autoimmune disease commonly triggers joint pain, stiffness, and swelling, affecting the entire body and leading to permanent joint and tissue damage if left untreated.

30. Symptomatically, Ms. James is treated for painful swollen joints, stiffness, swollen fingers, visible skin rashes, reduced range of motion, and fatigue. In all, the anxiety, fatigue, and depression these symptoms have caused Ms. James has affected her work as a Senior IT Analyst, leading to a lack of motivation and concentration.

31. In the course of Ms. James treatment, her symptoms have not improved and continue to worsen.

32. Medically, Ms. James has been followed by her primary care physician Dr. Lanyn Benoit, and Dr. Stauber, her rheumatologist.

33. In September of 2018, Ms. James had an initial workup with Dr. Stauber, where he noted that Ms. James had an acute onset of scaly rashes over her right elbow and subsequent myalgias and joint pains located mainly in her hands and wrists—all common side effects of PsA.

34. On September 16, 2019, now diagnosed with PsA in her hands, wrists, and knees, a joint exam showed a decreased active and passive range of motion with crepitus in Ms. James' right shoulder, bony enlargements, tenderness, and mild pain when extending her right arm.

35. Furthermore, Dr. Stauber noted swelling over Ms. James' wrists and three lateral fingering that progressed up her arm into her elbow, causing bicep spasms and collar bone pain.

36. On November 18, 2019, despite medication, Dr. Stauber reported that Ms. James was experiencing an increase in knee pain with worse swelling on her left knee. Her symptoms of headache, fatigue, numbness, and tingling of her arm or legs, joint swelling, joint pain, back pain, and sleep issues were still persistent.

37. Given Ms. James persistent symptoms, on February 7, 2020, Dr. Benoit opined that Ms. James current course of treatment was not helping and Ms. James was showing no signs of improvement.

38. On February 13, 2020, Ms. James was referred to Washington University for a cortisone injection to alleviate pain in her left knee. At the appointment, Ms. James also underwent an arthrocentesis that yielded 30 ccs of fluid that had resulted from her inflammation.

39. Later that year, on August 3, 2020, Ms. James reported to Dr. Benoit that the numbness in her right leg had become worse with walking after a couple of steps and her calves were visibly swollen.

40. The increase in symptoms was partly due to no longer having the insurance coverage to pay for her rheumatoid treatment.

41. During the time she was forced to abandon her treatment, Dr. Benoit noted Ms. James experiencing an increase in heart rate, had considerable pains in her joints, increased swollenness, thrush on her tongue, chronic sinusitis, and upper respiratory tightness.

42. Approximately two weeks later, on August 14, Ms. James further reported having right-sided chest pain, which increased when laying down, and a painful, itchy rash.

43. Additionally, throughout treatment, Ms. James has been experiencing reoccurring upper respiratory problems, including coughing, congestion, and sinus infections.

44. Dr. Benoit explained that Ms. James' PsA medication had weakened her immune system, making her more susceptible to infection—such as covid-19.

45. At the time of this filing, Dr. Stauber is retired and no longer treating Ms. James.

46. Ms. James is unable to afford a new rheumatologist.

47. Ms. James medical records highlighted that without consistent access to medication, her condition is unlikely to improve further prolonging her ability to return to work.

48. Despite the objective medical evidence that Ms. James was suffering from PsA, resulting in a disability that prevented her from working at even a sedentary physical demand level, Lincoln denied Ms. James' appeal for LTD benefits.

**Occupational Analysis**

49. As part of its review, on September 9, 2020, Lincoln requested that Ms. James complete an occupational analysis.

50. The analysis was conducted with no review of Ms. James' medical records.

51. Instead, the analysis was based on a brief description of Ms. James, which stated that "[t]he employee [was] diagnosed with an immune mechanism disorder with muscle weakness, low back weakness and fatigue."

52. The analysis failed to acknowledge Ms. James' PsA diagnosis and her associated symptoms.

53. Furthermore, Ms. James' employers did not explicitly outline the physical demands of Ms. James' position; therefore, the analysis was based solely on the Dictionary of Occupational Titles.

54. Despite these inadequacies, Lincoln relied on the occupational analysis to deny Ms. James her LTD benefits.

55. Lincoln determined that Ms. James occupation as a Senior IT Analyst is performed most often in the national economy at a sedentary physical demand level, which required *frequent* fingering, talking, hearing, and near acuity, and *occasional* reaching and handling.

56. Ms. James' medical records from both Dr. Stauber and Dr. Benoit clearly document that Ms. James' PsA predominantly affected her hands, wrists, knees.

57. Due to Ms. James' PsA, she is unable to work at a sedentary demand level.

58. Despite the objective medical evidence that shows Ms. James' is unable to work at a sedentary demand level, Lincoln failed to make claims decisions in her favor and used the occupational analysis against her.

**Independent Medical Examination**

59. On November 17, 2021, Ms. James submitted an Independent Medical Exam (IME) in support of her July 7, 2021, appeal regarding the adverse determination of her LTD benefits.

60. The IME found that Ms. James was functioning at a very poor level due to her symptoms of uncontrolled psoriatic arthritis and her mental status.

61. The IME concluded that as a result Ms. James' symptoms, she would have a difficult time maintaining a sedentary job in the open market.

62. In its denial letter, Lincoln noted that the IME was performed by Dr. Hinton on November 15, 2021, approximately fourteen months from the September 23, 2020, claim closure date.

63. Lincoln acknowledged the IME but stated that it was their position that "an IME conducted over a year from the date of the claim was closed would not provide findings upon which to accurately assess Ms. James' capacity during the relevant time period."

64. Due to scheduling conflicts, three different extensions were granted to Ms. James' counsel, with the last extension extending to November 30, 2021, so the IME could be included in Lincoln's review.

65. In none of Lincoln's letters granting extensions was Ms. James' counsel ever made aware of Lincoln's position as stated in Paragraph 63.

66. Lincoln failed to specify what additional information Ms. James could have produced to further its review of her claims.

67. This breach of communication constitutes a direct breach of the fiduciary duty of loyalty.

**Medical Reviewers**

68. On September 4, 2020, Lincoln hired Dr. Alfred Becker to complete a review of Ms. James' medical record.

69. Based on Dr. Becker's review, Lincoln denied Ms. James LTD claim.

70. Despite completing the initial medical assessment, Lincoln also paid Dr. Becker to review Ms. James' claims appeal.

71. On July 29, 2021, Dr. Becker completed his review of Ms. James' appeal, stating that his original opinions had not changed.

72. In response to Dr. Becker's review of Ms. James' appeal, on November 15, 2021, Ms. James submitted an Independent Medical Exam (IME) to Lincoln's reviewers.

73. After reviewing the IME, Dr. Becker's opinion remained the same.

74. Upon realizing Dr. Becker had previously completed the original clinical assessment on Ms. James' claim prior to her appeal, Lincoln requested a new clinical assessment be completed by a different physician.

75. Despite this conflict, Lincoln continued to rely on Dr. Becker's medical review from the appeal process in its appeal determination.

76. Lincoln's denial letter states that Dr. Becker's review of the appeal was an "addendum" review of original assessment, but nowhere in the report is that specified.

77. On December 15, 2021, Dr. Elena Schiopu completed a clinical assessment of Ms. James' claim.

78. Dr. Schiopu review completely discredited Ms. James' treating physicians, medical records, and treatment.

79. Without a physical examination of Ms. James' condition, Dr. Schiopu determined that her psoriatic arthritis diagnosis was inadequate and re-diagnosed her with fibromyalgia.

80. Dr. Schiopu made this decision based on Ms. James' November 15, 2021, IME.

81. Despite Lincoln asserting in its denial letter that because the IME was conducted fourteen months from the date Ms. James' claim was closed it could not provide findings upon which to accurately assess Ms. James' capacity, Dr. Schiopu's review, which Lincoln relies upon, bases its Fibromyalgia diagnosis on the IME.

82. In the "History of Illness" section of Ms. James' IME it is revealed that in 2005 Ms. James' was diagnosed with fibromyalgia after inconclusive result for systemic lupus erythematous.

83. Thirteen years later, in 2018, Ms. James' treating physicians instead determined she was suffering from psoriatic arthritis.

84. Prior to Dr. Schiopu's review, Ms. James' diagnosis was accepted by Lincoln and its previous medical reviewer Dr. Becker.

85. ERISA §2560.503-1(h)(iv)(4)(i) requires that before an adverse benefit determination can be issued on review of a disability benefit claim, the plan administrator shall:

a. provide the claimant, free of charge, with any new or additional evidence considered, relied upon, or generated by the plan, insurer, or other person making the benefit determination (or at the direction of the plan, insurer or such other person) in connection with the claim, and;

b. such evidence must be provided as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to give the claimant a reasonable opportunity to respond prior to that date.

86. Lincoln did not afford Ms. James a reasonable opportunity to respond to Dr. Schiopu's review before the January 5, 2022, notice of adverse benefit determination was issued.

87. Lincoln has failed to follow claims procedures consistent with the requirements of the Department of Labor regulations governing ERISA.

88. Therefore, Ms. James is deemed to have exhausted the administrative remedies available under the plan and is be entitled to pursue any available remedies on the basis that Lincoln has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

89. As a result of Lincoln's violations of ERISA, Lincoln has failed to implement appropriate processes and procedures to fully and fairly evaluate claims under the Plan, thus has further breached its duty of loyalty owed to Plan beneficiaries such as Ms. James.

90. Lincoln breached its fiduciary duties under ERISA § 404, 29 U.S.C. § 1104, insofar as it failed to discharge its duties handling Ms. James' benefits claim in a careful, skillful, and diligent manner.

91. As a result, Ms. James suffered actual harm, as she was denied her LTD benefits to which she was entitled under the Plan, the incurred attorneys' fees and costs, and suffered other financial losses.

92. By giving weight to medical reviewers that had inherent conflicts of interest, failed to conduct personal physical examinations, and the other errors outlined it is clear that Lincoln failed to use the prudence of reasonable claim administrator in breach of the fiduciary duty it owed to Ms. James.

**WHEREFORE**, Plaintiff Kristi James respectfully prays for judgment against Defendant The Lincoln National Life Insurance Company, granting equitable relief of:

- enjoining continued review of any claims under the current process and procedures currently in place
- mandating that Lincoln draft and implement new processes and procedures that correlate to the goals of the Benefit Plan and 29 U.S.C. 1001 et seq.,
- a remand Kristi James' claim of benefits for review under the revised processes and procedures,
- Restitution for the financial harm caused by Lincoln's breahes of fiduciary duties;
- as well as attorney fees and costs incurred herein, and for any other such equitable relief as this Court deems just and proper under the circumstances.

**Respectfully submitted,**

**GALLAGHER DAVIS, L.L.P.**

*/s/ Adam J. Olszeski*
Matthew R. Davis, #MO58205
Adam J. Olszeski, #MO66126
2333 S. Hanley Road
St. Louis, Missouri 63144
(314) 725-1780
Fax: (314) 725-0101
matt@gallagherdavis.com
adam@gallagherdavis.com

*Attorneys for Plaintiff*