**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KRISTI JAMES,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:22-cv-00502-JAR |
| | ) | |
| **THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF KRISTI JAMES MOTION FOR LIMITED DISCOVERY**

COMES NOW Plaintiff, by and through undersigned counsel, and for her Memorandum of Law in Support of her motion for limited discovery states as follows:

## Introduction

This is an ERISA case for long term disability benefits provided under an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002. In the proposed scheduling plan, the parties identified that they did not agree on the scope of discovery permitted under ERISA as it applies to the facts in this case and in response the Court in its Case Management Order instructed Plaintiff to file a Motion for Discovery if discovery beyond the administrative record was necessary. This motion and memorandum follow.

## Background

Ms. James suffers from Psoriatic arthritis, an autoimmune disease that mistakenly attacks healthy tissue, primarily in the joints and skin. [Adm. Rec. at Lincoln/James 280-283]. The autoimmune disease commonly triggers joint pain, stiffness, and swelling, affecting the entire body and leading to permanent joint and tissue damage if left untreated. [*Id*.] Symptomatically, Ms. James is treated for painful swollen joints, stiffness, swollen fingers, visible skin rashes, reduced

range of motion, and fatigue. [*Id*.] In all, the anxiety, fatigue, and depression these symptoms have caused Ms. James has affected her work as a Senior IT Analyst, leading to a lack of motivation and concentration. [*Id*.]

Because of this condition and the resulting symptoms Ms. James became unable to perform the principal job functions of her sedentary job function. [*Id*.] Lincoln agreed and began paying Ms. James LTD benefits in September of 2019. [*Id*.]

In September of 2020, Lincoln denied further benefits. [Adm. Rec. at Lincoln/James 371-374]. The decision to deny was based solely upon the opinion of Dr. Alfred Becker who was retained by Lincoln to perform a paper review of Ms. James' medical records. [*Id*.] At all times relevant it is the medical opinion of Ms. James' treating physicians that the objective medical evidence supports Ms. James' inability to perform sedentary work on a consistent basis. [*Id*.] Yet, Dr. Becker who never examined Ms. James called into question the objective medical findings of Ms. James treating physicians and opined that the medical records do not support the restrictions and limitations prescribed. [Adm. Rec. at Lincoln/James 379-384]. Dr. Becker nor Lincoln could point to any subjective medical evidence to support Dr. Becker's opinion rather Dr. Becker's stated opinion was that so. [Adm. Rec. at Lincoln/James 371-374].

As part of the appeal of Lincoln's denial of benefits Ms. James submitted updated medical records from Ms. James' treating physicians, which still supported disability. [Adm. Rec. at Lincoln/James 280-283]. Additionally – since Lincoln did not find the opinions of Ms. James' physicians compelling – Ms. James also obtained an Independent medical examination performed by Dr. Hinton. [*Id*.] Dr. Hinton physically examined Ms. James and determined that the restricting and limiting Ms. James at a sub sedentary level was both proper and appropriate. [*Id*.]

Ultimately, Lincoln denied Ms. James' appeal. During the review Lincoln decided to ignore Dr. Hinton's report, stating:

> While the IME was acknowledged, it is our position that an IME conducted over a year from the date the claim was closed would not provide findings upon which to accurately assess Ms. James' capacity during the relevant time period.

[Adm. Rec. at Lincoln/James 196]. Ultimately, Lincoln retained a physician to perform a second review of Ms. James medical records. [Adm. Rec. at Lincoln/James 192-200]. That review was performed by Dr. Schiopu. [*Id.*] Like Dr. Becker, Dr. Schiopu did not perform a physical examination and opined that the prescribed restrictions and limitations were not supported by the objective medical findings. [Adm. Rec. at Lincoln/James 201-206]. Dr. Schiopu went even further though and opined that Ms. James was not even suffering from Psoriatic arthritis. [*Id.*]

**<u>Standard of Review</u>**

The appropriate standard of review in this matter is the "modified abuse of discretion standard" as discussed by the 8th Circuit in *McIntyre v. Reliance Std. Life Ins. Co.*, 972 F.3d 955, 959 (8th Cir. 2020) and first outlined in *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160-61 (8TH Cir. 1998).

In *MetLife v. Glenn*, the U.S. Supreme Court Stated that:

> Conflicts are but one factor among many that a reviewing judge must take into account. Benefits decisions arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts –which themselves vary in kind and in degree of seriousness—for us to come up with a one-size fits-all procedural system that is likely to promote fair and accurate review. Indeed, special procedural rules would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress. …

> Not only trust law, but also administrative law, can ask judges to determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together.

*Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 114 (2008) (internal citations omitted).

In response to that holding, the 8th Circuit adopted the modified abuse of discretion standard of review to permit judges to explore all conflicts of interests and procedural irregularities that exist in the administrative record and determine how such conflicts and irregularities affect the lawfulness of a Plan administrator's discretionary decision making. See *McIntyre v. Reliance Std. Life Ins. Co.*, 972 F.3d 955 (8th Cir. 2020).

The modified abuse of discretion standard is appropriate when: (1) a palpable conflict of interest or procedural irregularities exist, which (2) caused a serious breach of the plan administrator's fiduciary duty. *See McIntyre*, 972 F.3d at 959. (citing and discussing *Woo*, 144 F.3d at 1160). Here, there is no dispute that a conflict of interest exists. As will be shown below, there are also procedural irregularities. The second prong can only ever be satisfied if discovery is granted beyond the administrative record.

**Right to Discovery**

Ms. James is pursing two alternative theories of recovery. [See Doc #1 – Complaint.] Count I alleges a breach of fiduciary duty stemming from a faulty process under §1132(a)(3) and Count II is brought pursuant to §1132(a)(1)(b) for recovery of wrongfully denied benefits. [*Id.*] A claim brought for equitable remedies under §1132 (a)(3) "flows from the process, not the denial of benefits itself," and is inherently separate and distinct from a claim under §1132 (a)(1)(b). *Jones v. Aetna Life Ins. Co.*, 856 F.3d 541, 547 (8th Cir. 2017). Discovery is appropriate under both causes of action in this matter.

1) <u>*Discovery is Necessary Under Ms. James § 1132(A)(1)(B) Claim for Wrongful Denial of Benefits*</u>

As Judge Nanette Baker recently recited, the law of this district and the 8th Circuit is that discovery is appropriate beyond the administrative record:

> In a wrongful denial of benefits case, a district court may permit the admission of additional evidence if the plaintiff shows "good cause" for the court to do so. *Brown v. Seitz Foods, Inc., Disability Ben. Plan*, 140 F.3d 1198, 1200 (8th Cir. 1998). Discovery may be permitted to establish either a palpable conflict of interest or serious procedural irregularity. *See Farley v. Arkansas Blue Cross & Blue Shield*, 147 F.3d 774, 776 n.4 (8th Cir. 1998). Conflicts of interest exists whenever the same entity both determines benefits eligibility under an ERISA plan and pays the benefits out of its own pocket. *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105, 114, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008). A procedural irregularity is said to exist where the plan administrator, in the exercise of its power, acted dishonestly, from improper motive, or failed to use sound judgment in reaching its decision. *Menz v. Procter & Gamble Health Care Plan*, 520 F.3d 865, 869 (8th Cir. 2008).

*Radle v. UNUM Life Ins. Co. of Am.*, 2022 U.S. Dist. Lexis 145289 (E.D. Mo. Aug. 15, 2022).

It is undisputed that Lincoln is both the decider and payer of LTD benefits under the plan at issue, see [Doc #1 at ¶¶ 6-7] and [Doc #5 at ¶¶ 6-7], and bears an inherent conflict of interest. See *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). Additionally, it is apparent that at least two procedural irregularities are apparent from the administrative record.

First, Lincoln failed to provide a full and fair review of all the evidence produced during the appeal. ERISA regulations require plan administrators provide a full and fair review of all appeals of adverse benefit determinations. 29 C.F.R § 2560.503-1(h). In part, a full and fair review requires the administrator to "take into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." 29 C.F.R. § 2560.503-1(h)(2)(iv). Here, Lincoln expressly stated that it did not take into consideration the IME

report of Dr. Hinton. [Admin. Rec. at Lincoln/James 196]. Because it is required to consider all evidence, Lincoln's appeal specialist's decision to not consider the IME report constitutes a failure of good judgment.

Additionally, Lincoln relied upon a medical records review that not only disagreed with the restrictions and limitations recommended by Ms. James' physician but refuted the objective diagnoses. [Admin. Rec. at Lincoln/James 204]. Those diagnoses where supported by both Dr. Becker – Lincoln's first retained physician – and the IME conducted by Dr. Hinton. [Admin. Rec. at Lincoln/James 248-252 and 280-283]. Relying upon a physician that is so far removed from the objective medical findings of multiple physicians calls into question Dr. Schiopu's qualifications to act as a physician reviewer.

29 C.F.R. §2560.503-1(b)(7) expressly requires medical reviewers to be retained for their competence as medical reviewers and not for the "likelihood that the individual will support the denial of benefits." At least two other Courts have questioned Dr. Schiopu's credibility/competence in in the ERISA context. In *Vaughn v. Reliance Standard Life Insurance Company*, the Court found that Dr. Schiopu to not be credible because her opinion changed in conjunction with the needs of the insurance company that hired her. See Exhibit 1, *unpublished opinion from Case No. 2:16-cv-00341-SRB, in the Dist. Court of Arizona.* Similarly, in *Reetz v. Hartford Life & Accident Ins. Co.*, 294 F.Supp. 3d 1068, 1084 (W.D. Wa. 2018) the Court found that Dr. Schiopu's opinions were unsupported and arbitrary in nature. See also, *McCulloch v. Hartford Life and Accident Insurance Company*, 2020 U.S. Dist. LEXIS 244758.

Because of Dr. Schiopu's proven track record of biases towards the insurance company that hired her and the erratic deviation regarding Ms. James' diagnosis relying upon Dr. Schiopu's

opinion to deny benefits must also be considered a failure of good judgment on behalf of Lincoln's appeal specialist.

Here, good cause exists because while it is apparent from the administrative record that Lincoln failed to comply with at least parts of the ERISA requirements for a proper review procedure and that a physician with a history of biased opinions was retained. Also, it is evidence that Lincoln has an inherent conflict of interest. What is not evident is whether those irregularities were just the byproduct of an imperfect system and had no effect on the outcome of Ms. James' appeal, or if they were indications of a biased process that placed Lincoln's interest before Ms. James'.

Discovery is necessary in this case – and good cause exists – to determine whether Lincoln properly shielded its employees and retained medical experts from its inherent conflict of interest. Limited written discovery will prove if the issues identified above were de minimums errors or byproduct of biased review.

Because this Court **<u>must</u>** decide of what affect the procedural irregularities and conflicts had on the reasonableness of the outcome of the appeal under the modified abuse of discretion standard, this discovery is both necessary and helpful for the Court to make the requisite findings and to weigh the affect – if any – these issues had on the outcome.

2) <u>*Discovery is necessary in all claims brought under §1132(a)(3)*</u>

Discovery is necessary in *all* §1132(a)(3) claims, the only limitation on discovery is those contained in the Federal Rules of Civil Procedure. *Kostecki*, 2014 LEXIS 24858 at *4 (emphasis added).

Claims brought for breach of an administrator's fiduciary duties under §1132(a)(3) require discovery to explore the nature and extent of the purported conflict or irregularity that form the

basis of the administrator's fiduciary duties. *Sampson v. Prudential Ins. Co. of Am*., 4:08-CV-1290 CDP LEXIS 24858 (E.D. Mo. Ct. Mar. 26, 2009); *Kostecki v. Prudential Ins. Co. of Am*., 4:14-CV-695 JCH LEXIS 144297 (E.D. Mo. Ct. Oct. 10, 2014); and *Friemon v. Nat'l Carriers' Conf. Comm*., 2018 U.S. Dist. LEXIS 199142, *3 (E.D. Mo. Ct. Nov. 26, 2018).

Because the courts will conduct a more searching review of the breach of fiduciary duty claim, Plaintiff is entitled to discovery as it relates to this claim. *See Waldoch v. Medtronic*, Inc., 757 F.3d 822, 830 (8th Cir. 2014).

**Discovery Sought**

As a result of the procedural irregularities identified above Plaintiff seeks the following discovery:

1. Written discovery regarding all internal guidelines, policies, claim handling manuals, and/or procedures – however named – that govern Lincoln's review of an internal appeal of benefits denial.
2. Written discovery regarding all internal guidelines, policies, claim handling manuals, hiring practices and/or procedures – however named – that govern Lincoln's retention of a contract medical reviewer, whether through a third-party vendor or otherwise, including every way that Lincoln guarantees that that the retention and/or compensation was not based on the likelihood that the third-party would support the denial of benefits
3. Written discovery directed to third party vendor Exam Coordinators Network regarding how it retains medical reviewers and if it keeps information about medical reviewers regarding the rate its retained medical professionals support or deny continued benefits.
4. Written discovery directed to third party vendor Exam Coordinators Network regarding how it is compensated by Lincoln.

5. Written discovery into any and all manuals, procedures, and guidelines (however so named) that govern the retention of third-party reviewers.
6. Deposition of Lincoln Appeal Specialist Jennifer Dimaggio—not to exceed one hour in length—so as to inquire what information contained in Dr. Shiopu's report was more compelling than the reports of Ms. James' treating physicians and why the IME report of Dr. Hinton was not considered.
7. Written discovery into all internal guidelines, policies, claim handling manuals, and/or procedures – however named – that govern Lincoln's employee reviews and/or employee retention or advancement.

**Respectfully submitted,**

**GALLAGHER DAVIS, L.L.P.**

*/s/ Adam J. Olszeski*
Matthew R. Davis, MO58205
Adam J. Olszeski, MO66126
2333 S. Hanley Road
St. Louis, Missouri 63144
(314) 725-1780
Fax: (314) 725-0101
matt@gallagherdavis.com
adam@gallagherdavis.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on the 21st day of November, 2022 a copy of the foregoing was served via the Court's electronic filing system, upon all counsel of record.

*/s/Adam J. Olszeski*