**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Wendy S. Vaughan,

Plaintiff,

v.

Reliance Standard Life Insurance Company,

Defendant.

No. CV-16-00341-PHX-SRB

**ORDER**

The Court now considers Plaintiff's Motion for Summary Judgment ("PMSJ") (Doc. 40) and Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Reliance Standard Life Insurance Company's Cross Motion for Summary Judgment ("DMSJ") (Doc. 43). The Court heard oral argument on both Motions on April 24, 2017. (Doc. 58, Minute Entry.) The question presented is whether Defendant violated the Employee Retirement Income Security Act of 1974 ("ERISA") by denying Plaintiff's claim for benefits under a long term disability policy issued and administered by Defendant.

## I. BACKGROUND

Plaintiff began her employment with Medtronic, Inc. on June 9, 1980, where she worked as a Principal Reliability Technician. (Doc. 41, Pl.'s Statement of Facts in Supp. of PMSJ ("PSOF") ¶ 1; Doc. 44, Resp. in Opp'n to PSOF with Combined Counter Statement of Facts in Supp. of DMSJ ("RPSOF") ¶ 1.)[1] Plaintiff's work was classified as

---

[1] Defendant's Counter Statement of Facts begins on page 34 of its Response and

"light". (PSOF ¶ 1; RPSOF ¶ 1.)[2] After she became disabled on January 6, 2014, Plaintiff applied for and was granted short term disability benefits through July 2014. (PSOF ¶ 1; RPSOF ¶ 1.) Plaintiff has been diagnosed with Crohn's disease, rheumatoid arthritis, Meniere's disease, seizures, migraine headaches, localization related (focal) partial epilepsy and epileptic syndromes with partial seizures, occipital neuralgia, palpitations, anxiety, and depression. (PSOF ¶ 2; RPSOF ¶ 2.)

Medtronic offered employees long term disability benefits through a separate policy issued, funded, and administered by Defendant. (DSOF ¶ 1; Doc. 47-1, Pl.'s Resp. to DSOF in Supp. of DMSJ ("RDSOF") ¶ 1; DMSJ at 2.) The policy provides eligible employees with benefits following a satisfactory showing of "Total Disability." (DSOF ¶ 2; RDSOF ¶ 2.) The policy defines Total Disability to mean "that as a result of an Injury or Sickness…an Insured cannot perform the material duties of his/her Regular Occupation." (DSOF ¶ 3; RDSOF ¶ 3.) The policy also grants Defendant "the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility requirements for benefits." (DSOF ¶ 4; RDSOF ¶ 4.)

On December 19, 2013, James Combs, MS/PAC, evaluated Plaintiff. (DSOF ¶ 5; RDSOF ¶ 5.) Mr. Combs documented Plaintiff's symptoms and determined that she suffered from rheumatoid arthritis and diarrhea. (DSOF ¶ 7; RDSOF ¶ 7.) Mr. Combs noted that he "spent one hour with [Plaintiff] filling out her paperwork and discussing her case and her future." (DSOF ¶ 8; RDSOF ¶ 8.) Plaintiff told Mr. Combs that her diarrhea prevented her from "get[ting] away from the bathroom" and indicated that she "would like to take January 6, [2014] to April 6, 2014 off to get well." (DSOF ¶ 10; RDSOF ¶ 10.) Mr. Combs completed a Health Care Provider Certification stating that Plaintiff's conditions prevented her from returning to work until April 7, 2014.

---

will be abbreviated "DSOF".

[2] The parties use the definitions of "light" and "sedentary" work provided in the Dictionary of Occupational Titles. (PSOF ¶ 1; RPSOF ¶ 1.) Given the parties' agreement concerning this terminology, no exhaustive definitions are provided here; however, the Court notes the important distinction that the physical demands of light work exceed that of sedentary work.

(DSOF ¶ 11; RDSOF ¶ 11.) On March 31, 2014, Mr. Combs reevaluated Plaintiff and noted Plaintiff's "extremely tender" abdomen, joint tenderness, and depressed affect. (DSOF ¶ 13; RDSOF ¶ 13.) Mr. Combs then extended Plaintiff's anticipated return-to-work date to July 6, 2014. (DSOF ¶ 14; RDSOF ¶ 14.) On April 28, 2014, Plaintiff attended another follow-up appointment with Mr. Combs. (DSOF ¶ 15; RDSOF ¶ 15.) Plaintiff reported debilitating hand, wrist, knee, and ankle pain, and informed Mr. Combs that the arthritis medications were of little help. (DSOF ¶ 15; RDSOF ¶ 15.) Mr. Combs's examination revealed that Plaintiff's abdominal symptoms had subsided but that she retained "subjective tenderness bilaterally in most all joints of her body." (DSOF ¶ 16; RDSOF ¶ 16.) He then extended Plaintiff's anticipated return-to-work date to July 15, 2014. (DSOF ¶ 17; RDSOF ¶ 17.) Plaintiff did not return to work and filed a claim for long term disability benefits in July 2014. (DSOF ¶ 18; RDSOF ¶ 18.)

On July 28, 2014, Mr. Combs completed an Attending Physician questionnaire in support of Plaintiff's long term benefits application. (DSOF ¶ 19; RDSOF ¶ 19.) Mr. Combs reported that Plaintiff's conditions prevented her from sitting, standing, walking, driving, or performing any other relevant physical activities during the course of a workday. (DSOF ¶ 19; RDSOF ¶ 19.) Plaintiff's application also included a description of her medical history, in which Plaintiff stated that she was "struggling with migraines, seizure disorder, Meniere's disease and a pinched nerve for several years," experiencing dizziness and vertigo, as well as "intestinal issues and debilitating joint pain." (DSOF ¶ 21; RDSOF ¶ 21.) Defendant referred Plaintiff's claim to Professional Disability Associates to have an independent physician review Plaintiff's medical records. (DSOF ¶ 23; RDSOF ¶ 23.) Robert J. Cooper, M.D., who is Board Certified in Internal Medicine and Endocrinology, reviewed Plaintiff's records and issued his report on October 13, 2014. (DSOF ¶ 24; RDSOF ¶ 24.) Dr. Cooper identified a primary diagnosis of "regional enteritis suggestive of Crohn's Disease" and noted evidence suggestive of equivocal synovitis. (DSOF ¶¶ 25-26; RDSOF ¶¶ 25-26.) Aside from Plaintiff's own complaints about joint pain and diarrhea, however, Dr. Cooper found no

objective evidence to conclusively support these diagnoses and determined that "there should be no restrictions and limitations at or around 1/06/2014." (DSOF ¶ 26; RDSOF ¶ 26.)

On October 29, 2014, Defendant issued a letter denying Plaintiff's claim. (DSOF ¶ 27; RDSOF ¶ 27.) Before Plaintiff received the denial letter, however, Plaintiff submitted additional medical records supporting her claim. (DSOF ¶ 28; RDSOF ¶ 28.) Dr. Cooper reviewed them and submitted an addendum to his report on November 12, 2014, stating that his findings remained unchanged. (DSOF ¶ 28; RDSOF ¶ 28.) On December 3, 2014, Defendant issued an addendum to its denial and advised Plaintiff of her right to appeal. (DSOF ¶ 29; RDSOF ¶ 29.) Plaintiff submitted a letter appealing Defendant's decision on December 9, 2014. (DSOF ¶ 30; RDSOF ¶ 30.)

On appeal, Defendant referred Plaintiff's claim to Dane Street for review by another independent physician. (DSOF ¶ 31; RDSOF ¶ 31.) Brian McCrary, D.O., MPH, who is Board Certified in Occupational Medicine, reviewed Plaintiff's records and examined Plaintiff before issuing a report on February 12, 2015. (DSOF ¶ 32; RDSOF ¶ 32.) Dr. McCrary identified "subjective dizziness and Crohn's disease" as the primary complaints impacting Plaintiff as of January 6, 2014, but found that these conditions were "well controlled" and concluded that Plaintiff was capable of performing light work on a full-time basis. (DSOF ¶ 33-36; RDSOF ¶ 33-36.) On March 3, 2015, in response to a complaint from Plaintiff about Dr. McCrary's examination, Defendant gave Plaintiff thirty days to review a copy of Dr. McCrary's report and submit a written complaint. (DSOF ¶ 37; RDSOF ¶ 37.) On April 1, 2015, Mr. Combs submitted a letter disputing Dr. McCrary's findings, opining that Plaintiff "is still sick and has not been released to go back to work, even for light exertion occupation." (PSOF ¶ 4; RPSOF ¶ 4.) Plaintiff then withdrew her appeal on April 23, 2015. (DSOF ¶ 39; RDSOF ¶ 39.)

After retaining counsel, Plaintiff reopened her appeal and submitted additional medical records. (DSOF ¶¶ 40-44, 48; RDSOF ¶¶ 40-44, 48.) On June 30, 2015, Mr. Combs submitted another letter on Plaintiff's behalf disagreeing with Dr. McCrary's

opinions concerning Plaintiff's conditions. (DSOF ¶¶ 49-50; RDSOF ¶¶ 49-50.) Plaintiff also submitted affidavits in support of her appeal from herself, as well as her mother, her son, and a close friend. (DSOF ¶ 51; RDSOF ¶ 51.) On May 29, 2015, Plaintiff underwent a Functional Capacity Evaluation, which was summarized in a letter by Sandy Goldstein, PT, CDMS, on June 23, 2015. (DSOF ¶ 52; RDSOF ¶ 52.) Mr. Goldstein opined that Plaintiff's functional capacity evaluation results "do not support a return to work as a PRINCIPAL RELIABILITY TECHNICIAN or any work including SEDENTARY work due to a combination of her medical conditions and the restrictions and limitations they impose." (PSOF ¶ 14; RPSOF ¶ 14.) On June 12, 2015, balance and dizziness specialist and oto-neurologist Michael Robb, M.D., authored a narrative letter opining that Plaintiff "is not fit to work part time or full time in any job at this time" and that "she would likely have to lay down on the job to overcome her dizzy spells." (PSOF ¶ 7; RPSOF ¶ 7.) On June 18, 2015, Plaintiff underwent an independent medical examination by board certified rheumatologist Carolyn Pace, M.D., after which Dr. Pace opined that "it is reasonable to assume [Plaintiff] has not been able to work in her prior occupation as a lab technician since January 3, 2014 . . . [and] to assume she has been unable to work in any occupation since January 3, 2014 and will be [sic] continue to be indefinitely." (PSOF ¶ 10; RPSOF ¶ 10.) On June 27, 2015, Robin Generaux, Ph.D., CRC, a vocational rehabilitation counselor certified with the Commission on Rehabilitation Counselor Certification and a Senior Disability Analyst with the American Board of Disability Analysts, opined that Plaintiff "meets the definition of disability in that she is unable to return to her prior occupation or any occupation that may exist in the national economy." (PSOF ¶ 84; RPSOF ¶ 84.)

Defendant then referred Plaintiff's claim to Medical Consultants Network for an independent physician review of Plaintiff's medical records. (DSOF ¶ 61; RDSOF ¶ 61.) On August 3, 2015, rheumatologist Elena Schiopu, M.D., authored an opinion wherein she stated that Plaintiff "has full work capacity on a full time, consistent basis as of January 6, 2014, and ongoing." (DSOF ¶ 63; RDSOF ¶ 63.) Dr. Schiopu explained that

she believed Plaintiff

> could work at a sedentary level, exerting up to ten pounds of force occasionally, as far as carrying pushing, pulling, or lifting. She could use her hands without any limitations. She could reach above, at or below shoulder level without any limitations. She could sit for up to 50 minutes in an hour, for 400 minutes in an eight-hour day. She could walk or stand for five minutes per hour, up to 40 minutes for an eight-hour day. She should be allowed to change her position frequently, however, as frequently as every 10 to 15 minutes for one minute. She needs to be able to stretch for at least one minute if she is sitting for 15 minutes. She should be able to sit down and rest for one minute every 15 minutes.

(PSOF ¶ 97; RPSOF ¶ 97.)

Mr. Combs, Dr. Robb, Dr. Pace, and Mr. Goldstein each submitted response letters explaining their disagreement with Dr. Schiopu's opinion. (DSOF ¶ 67; RDSOF ¶ 67.) After reviewing their letters, Dr. Schiopu authored an addendum on September 24, 2015, finding that the response letters provided no additional evidence warranting revision of her original opinion. (DSOF ¶¶ 69-70; RDSOF ¶¶ 69-70.) Responding to Defendant's clarification that Plaintiff's occupation actually required light rather than sedentary exertion, however, Dr. Schiopu revised her opinion to state that she believed Plaintiff could perform light work. (PSOF ¶ 98-99; RPSOF ¶ 98-99.) Defendant then upheld its decision denying Plaintiff's claim, citing a lack of "diagnostic and clinical evidence." (DSOF ¶ 71; RDSOF ¶ 71.) Having exhausted her administrative remedies, Plaintiff now appeals to this Court. (DSOF ¶ 72; RDSOF ¶ 72.)

## II. LEGAL STANDARD AND ANALYSIS

### A. Standard of Review

The parties disagree as to the proper standard of review. Plaintiff argues that review should be de novo because of "Defendant's egregious ERISA violations." (PMSJ at 2.) Defendant maintains that an abuse of discretion standard applies because it has discretion to interpret the terms of the plan and to determine benefit eligibility. (DMSJ at 2.) When a plan does not confer discretion on the administrator "to determine eligibility for benefits or to construe the terms of the plan," a court must review the denial of benefits de novo "regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or

actual conflict of interest." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (quoting *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 1010, 111 (1989)). "[I]f the plan *does* confer discretionary authority as a matter of contractual agreement, then the standard of review shifts to abuse of discretion." *Abatie*, 458 F.3d at 963. But first, "the plan must unambiguously provide discretion to the administrator." *Id.* "Abuse of discretion review applies to a discretion-granting plan even if the administrator has a conflict of interest." *Abatie*, 458 F.3d at 965. Nevertheless, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone*, 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187); *Abatie*, 458 F.3d at 967 (concluding the Ninth Circuit requires abuse of discretion review whenever ERISA plan grants discretion to plan administrator, but informs that review with the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record).

Here, the policy provides that "[t]he claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits." (AR0014.)[3] Neither party disputes the provision's meaning. Nor does any structural conflict of interest change the applicable standard. *See Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 976 (9th Cir. 1999) (noting that conflict of interest exists when insurer both administers and funds ERISA plan); *Abatie*, 458 F.3d at 965. The Court accordingly reviews Defendant's decision for abuse of discretion, albeit with a slight nuance.

Ninth Circuit law provides that "the test for abuse of discretion in a factual determination (as opposed to legal error) is whether [a court] is left with a definite and firm conviction that a mistake has been committed." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (quotation marks omitted). The Court thus considers whether Defendant's decision was "(1) illogical, (2) implausible, or (3)

---

[3] The Court refers to the administrative record in accordance with the numbering assigned therein (e.g., "AR0001").

without support in inferences that may be drawn from the facts in the record." *Id.* Because the conflict must also inform the Court's review, however, an enduring question is how it factors into the abuse of discretion calculus. *Firestone*, 489 U.S. at 115; *accord Salomaa*, 642 F.3d at 676 (noting that "a higher degree of skepticism is appropriate where the administrator has a conflict of interest"). In ERISA cases reviewing for abuse of discretion, "summary judgment is, in most respects, merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material facts exists, do not apply." *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 930 (9th Cir. 2012) (quotation marks omitted). When considering whether a plan administrator abused its discretion, courts are limited to a review of the administrative record. *Abatie*, 458 F.3d at 970. But this rule is not without exception. If a conflict of interest is present, courts may look beyond the administrative record to fully assess that conflict's impact on the administrator's decision. *Stephan*, 697 F.3d at 930.

Defendant concedes that a structural conflict is present here. (DMSJ at 2.) Indeed, as an insurer-administrator, Defendant's fiduciary role "lies in perpetual conflict with its profit-making role as a business." *See Lang v. Long-Term Disability Plan of Sponsor Allied Remote Tech., Inc.*, 125 F.3d 794, 798 (9th Cir. 1997). The Court thus considers any evidence outside the administrative record that is relevant in determining whether that conflict actually affected Defendant's denial of Plaintiff's claim.

**B. Finding of Non-Disability**

Plaintiff argues that Defendant failed to provide Plaintiff a full and fair review as required by ERISA. Specifically, Plaintiff urges reversal because Defendant failed to (1) adequately train its claims examiners, (2) consider Dr. Schiopu's first opinion that Plaintiff could only perform sedentary work, (3) credit Plaintiff's medical evidence, and (4) engage in a meaningful dialogue during Plaintiff's appeal of the initial claim denial. Defendant maintains that it remained within the proper bounds of its discretionary authority and issued a denial supported by the evidence.

**1. Inadequate ERISA Training**

Plaintiff first contends that Defendant failed to provide adequate ERISA training to its employees. For example, Drew Walters, Defendant's Senior Benefits Analyst, testified at his deposition that Defendant provided him with no ERISA training and that he was unaware of his fiduciary responsibilities under ERISA. (Doc. 40, Ex. A - Dep. of Drew Walters, Dec. 9, 2016, 27:25-28:2, 55:18-22.) Karen McGill, Defendant's Manager of Quality Review, made similar statements concerning the sparsity of ERISA training and accountability for its appeals specialists. (*See, e.g.*, Doc. 40, Ex. A – Dep. of Karen McGill, Dec. 9, 2016, 29:7-9, 34:7-19, 44:21-45:7.) Though the Court is troubled by the apparent laxity of Defendant's training, Plaintiff cites no authority suggesting that ERISA mandates a specific level of training. The Court is similarly hard-pressed to find such a requirement. Nevertheless, the Court finds Defendant's deficient ERISA training, together with their employees' unawareness of their fiduciary duties, indicative of the lack of the full and fair review required by ERISA.

**2. Dr. Schiopu's First Opinion**

Plaintiff next argues that Defendant should have credited Dr. Schiopu's initial opinion that Plaintiff could only work at a sedentary level and that Defendant revealed its bias by asking Dr. Schiopu to complete an addendum addressing whether Plaintiff was capable of light work. Defendant counters that the addendum was requested only because it mistakenly listed Plaintiff's position as requiring sedentary rather than light exertion. At oral argument, Defendant elaborated that Dr. Schiopu's original opinion that Plaintiff could perform sedentary work was not stated as Plaintiff's maximum possible level of exertion. The Court disagrees.

In her original report, Dr. Schiopu goes beyond merely opining that Plaintiff could work at a sedentary level. Her opinion includes specific limitations on Plaintiff's ability to exert force (ten pounds occasionally), sit (fifty minutes per hour), and stand or walk (five minutes per hour). (AR1597.) She also notes Plaintiff's frequent need to change positions, stretch, and rest throughout the workday. (AR1597.) Her addendum, by

contrast, merely states that Plaintiff is capable of performing light work before proceeding to rebut the rebuttals of Plaintiff's experts. (AR0239.) Such a shift in Dr. Schiopu's opinion, without more, is cause for concern. Given the definitions of light and sedentary work, it does not necessarily follow that an individual with the limitations described in Dr. Schiopu's original opinion could meet the demands of light work. To the contrary, the detailed limitations described in Dr. Schiopu's initial opinion would arguably prevent Plaintiff from performing even sedentary work. (*See, e.g.*, AR0225-26 (Dr. Generaux letter comparing Dr. Schiopu's originally proposed limitations to the actual demands of sedentary work).) Defendant's unequivocal acceptance of Dr. Schiopu's summarily revised opinion is also suggestive of the lack of a full and fair review.

Defendant's assessment of Dr. Schiopu's opinion contrasts sharply with the skepticism with which Defendant evaluated medical evidence proffered by Plaintiff. Defendant's appeal denial letter carefully underscores inconsistencies in the opinions of Plaintiff's medical providers and vocational expert before rejecting their recommendations. (*See* AR0287-90.) Yet it omits any discussion of the friction between Dr. Schiopu's detailed first opinion and her more conclusory second opinion. (*See* AR0290.) Although Dr. McCrary had originally deemed Plaintiff fit for light work, the Court finds Defendant's apparent zeal to credit its own experts and discredit those of Plaintiff no less troubling. Defendant's refusal to apply equal rigor to its own experts bespeaks an "adversary bent on denying [Plaintiff's] claim" rather than a neutral arbiter, much less a loyal fiduciary. *See Friedrich v. Intel Corp.*, 181 F.3d 1105, 1110 (9th Cir. 1999). Considered in light of the policy's inherent conflict, such inconsistency implies the lack of a full and fair review. *See Abatie*, 458 F.3d at 969 ("[D]istrict courts are well equipped to consider the particulars of a conflict of interest, along with all the other facts and circumstances, to determine whether an abuse of discretion has occurred.").

**3. Plaintiff's Reliable Evidence**

Plaintiff additionally contends that Defendant abused its discretion by failing to

credit her reliable evidence, including the opinions of her treating physicians, vocational expert, and lay witnesses. "A court may weigh a conflict more heavily if…the administrator…fails to credit a claimant's reliable evidence." *Id.* at 968. Notably, ERISA does not require administrators to extend "special weight" to the opinions of treating physicians. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Nor must an administrator satisfy a "discrete burden of explanation" before crediting reliable evidence that conflicts with a treating physician's view. *Id.*; *see also Sotak v. Highmark Life Ins. Co*, No. CV-04-1062-PHX-SMM, 2006 WL 798868, at *3 (D. Ariz. Mar. 28, 2006) ("Defendant's acceptance of one opinion over the other is not evidence that Defendant acted arbitrarily."). Greater weight may nevertheless be proper where the facts so warrant. *See Gemmel v. Systemhouse, Inc.*, No. CIV 04-198-TUC-CKJ, 2009 WL 3157263, at *16 (D. Ariz. Sept. 28, 2009) (crediting numerosity of treating physician opinions favoring disability and their ability to observe claimant's symptoms).

Before the Court examines the propriety of Defendant's evidentiary decisions, though, the first step is to determine what types of evidence Defendant agreed to consider. *See Peterson v. Federal Express Corp. Long Term Disability Plan*, No. CV-05-1622-PHX-NVW, 2007 WL 1624644, at *26 (D. Ariz. June 4, 2007). Beyond requiring proof of Total Disability during the Elimination Period, the policy does not limit reliable evidence to objective medical findings. (*See* AR0001-33.) Indeed, it supplies no evidentiary threshold whatsoever, save for "proof of health acceptable to us" or "satisfactory proof of Total Disability to us." (AR0016, 18.) Neither is enlightening.

Defendant nevertheless maintains that requiring objective evidence was a reasonable interpretation. It was not. Plan administrators are not at liberty to write-in supplemental policy exclusions. *Canseco v. S. Cal. Const. Laborers Trust*, 93 F.3d 600, 608 (9th Cir. 1996) ("[P]ension plan trustees may not construe a plan so as to impose an additional requirement for eligibility that clashes with the terms of the plan."). To the contrary, administrators abuse their discretion when they construe plan provisions "in a way that conflicts with the plain language of the plan." *Eley v. Boeing Co.*, 945 F.2d 276,

279 (9th Cir. 1991), *abrogated on other grounds by Abatie*, 458 F.3d at 973.

The Ninth Circuit has not directly addressed the situation presented here.[4] Meanwhile, the circuits that have appear unanimous in their refusal of administrators' post hoc attempts to narrow the universe of evidence beyond the plain language of the plan. *See, e.g.*, *Rochow v. Life Ins. Co. of N. Am.*, 482 F.3d 860, 865-66 (6th Cir. 2007) (rejecting medical evidence requirement for plan merely calling for "satisfactory proof"); *House v. Paul Revere Life Ins. Co.*, 241 F.3d 1045, 1048 (8th Cir. 2001) (refusing "objective medical evidence" requirement where plan terms were silent); *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 443 (3d Cir. 1997) (denying implied "clinical evidence" requirement), *abrogated on other grounds by Metro Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). Additionally, in other disability contexts, the Ninth Circuit has emphasized the importance of treating physicians' subjective judgments in their medical evaluations. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) ("The subjective judgments of treating physicians are important, and properly play a role in their medical evaluations."); *Lester v. Chater*, 81 F.3d 821, 832-33 (9th Cir. 1995) (requiring ALJ to "give weight not only to the treating physician's clinical findings and interpretations of test results, but also to his subjective judgments.").

By refusing outright to consider any subjective evidence of Plaintiff's conditions, Defendant not only added a new term to the plan, but also omitted, without justification, an important component of the opinions of Plaintiff's treating physicians. As a result, Defendant hastily rejected—or perhaps ignored entirely[5]—Plaintiff's evidence, including

---

[4] The Ninth Circuit's rejection of a similar attempt to read an "objective medical evidence" requirement into an individual (non-ERISA) disability insurance policy is nevertheless suggestive of its position on the issue. *See Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1013 (9th Cir. 2007).

[5] Plaintiff cites *Rekstad v. U.S. Bancorp*, 451 F.3d 1114, 1120-21 (10th Cir. 2006), to support her argument that Defendant acted arbitrarily by disregarding her lay witness affidavits. The administrator in *Rekstad* conceded that the affidavits "were not considered in making our determination." *Id* at 1120. Defendant makes no such concession here. The Court accordingly limits its abuse of discretion finding concerning these affidavits only insofar as they were rejected pursuant to Defendant's improper interpretation of the policy. *Cf. Peterson v. Federal Express Corp. Long Term Disability Plan*, No. CV-05-1622-PHX-NVW, 2007 WL 1624644, at *27-28 (D. Ariz. June 4, 2007) (finding failure

the expert opinions of Mr. Combs, Mr. Goldstein, Dr. Pace, Dr. Generaux, and Dr. Robb; the lay-witness affidavits of Plaintiff's mother, son, and close friend; and even Plaintiff's own complaints. Therefore, to the extent Defendant failed to consider this evidence pursuant to its improper objective medical evidence requirement, this Court finds that Defendant abused its discretion.

**4. Meaningful Dialogue Requirement**

Plaintiff's final argument is that Defendant failed to properly communicate the specific deficiencies in her claim and give her an opportunity to cure them. Defendant claims that its handling of Plaintiff's claim actually exceeded ERISA's minimum standard. Not so. ERISA regulations call for a "meaningful dialogue" between plan administrators and claimants. *Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997) (citing 29 C.F.R. § 2560.503-1(f)). "If benefits are denied in whole or in part, the reason for the denial must be stated in reasonably clear language, with specific reference to the plan provisions that form the basis for the denial; if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it." *Id.*

Defendant's argument that it met this requirement rests entirely upon its accommodations of Plaintiff during the claim process. Examples include Defendant's willingness to reconsider Plaintiff's initial claim when she submitted additional evidence even after Defendant had issued a denial, to grant a thirty-day extension for Plaintiff to submit additional documentation on appeal, and to consider Plaintiff's rebuttal letters to Dr. Schiopu's report. But these practices, while laudable, are not what ERISA requires. The concern here, as in *Booton*, is not with a rigid deadline schedule, but rather with a failure to clearly communicate the basis for denial and to explain what additional

---

to credit lay witness affidavits improper given possibility that they can be source of objective findings required by plan).

The same applies to Plaintiff's subjective complaints about her symptoms. *See Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 872-73 (9th Cir. 2008) (noting lack of objective measures for pain-related conditions).

evidence, if any, was needed for Plaintiff to support her claim. *See* 110 F.3d at 1463-64. Even if the policy had actually required objective medical evidence, Defendant's repeated observation that Plaintiff's claim lacked "diagnostic and clinical data in support of the diagnoses made by [Plaintiff's] treating physicians" does not meet this plain language requirement. *See Salomaa*, 642 F.3d at 680 ("An administrator does not do its duty under the statute and regulations by saying merely 'we are not persuaded' or 'your evidence is insufficient.' Nor does it do its duty by elaborating upon its negative answer with meaningless medical mumbo jumbo."). This is especially true where, as here, the administrator is already conflicted. *See id.* The Court accordingly finds that Defendant abused its discretion by failing to engage in a meaningful dialogue with Plaintiff.

**C. Proper Remedy**

Plaintiff requests that the Court find that she is entitled to benefits under the "Regular Occupation" provision of the policy and, if the Court finds it appropriate, the "Any Occupation" provision as well. That would be premature. "[R]emand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination." *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 461 (9th Cir. 2014). "It is not the court's function *ab initio* to apply the correct standard to [Plaintiff's] claim." *Id.* (quoting *Henry v. The Home Ins. Co.*, 907 F. Supp. 1392, 1398-99 (C.D. Cal. 1995)). To be sure, remand would be inappropriate if "no factual determinations remain to be made in in this case." *Canseco v. Constr. Laborers Pension Trust for S. Cal.*, 93 F.3d 600, 609 (9th Cir. 1996). Remand is hardly such a "useless formality" here. *Gatti v. Reliance Standard Life Ins. Co.*, No. CV-01175-TUC-FRZ, 2006 WL 664422, at *6 (D. Ariz. Mar. 13, 2006) (citing *Miller v. United Welfare Fund*, 72 F.3d 1066, 1073 (2d Cir. 1995)). Plaintiff retains the burden of proving her entitlement to benefits. Likewise, Defendant, applying the correct standard, could still deny Plaintiff's claim.

**IT IS ORDERED** granting in part and denying in part Plaintiff's Motion for

Summary Judgment (Doc. 40).

**IT IS FURTHER ORDERED** denying Defendant's Cross-Motion for Summary Judgment (Doc. 43).

**IT IS FURTHER ORDERED** remanding this matter to Defendant for reconsideration of Plaintiff's claim in a manner consistent with this order.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly.

Dated this 1st day of September, 2017.

Susan R. Bolton
United States District Judge